IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs December 11, 2018

## TIMOTHY CARTER v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
No. 2012-B-1221     Cheryl Blackburn, Judge

### No. M2018-00061-CCA-R3-PC

The petitioner, Timothy Carter, appeals from the denial of his petition for post-conviction relief, which petition challenged his Davidson County Criminal Court jury convictions of theft of property valued at more than $60,000 and possession of a firearm by a convicted felon.  In this appeal, the petitioner asserts that the post-conviction court erred by concluding that he had forfeited the right to appointed counsel in the post-conviction proceeding and by ruling that he was not entitled to post-conviction relief.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Timothy Carter, Hartsville, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Davidson County Criminal Court jury convicted the petitioner of theft of property valued at more than $60,000 and possession of a firearm by a convicted felon, and the trial court sentenced the petitioner, a Career Offender, to 30 years' incarceration.  In our opinion affirming the convictions and accompanying sentence, this court summarized the case on direct appeal:

> This case arises from the theft of a comic book collection
> from a residence in La Vergne, Tennessee in April 2010.  The

[petitioner] was identified as a suspect in the theft when he sold or attempted to sell some of the comic books at area stores. During the investigation, law enforcement officers went to the [petitioner's] apartment and, upon seeing the stolen comic books in the backseat of a vehicle registered to the [petitioner], impounded his vehicle to the police department. After obtaining a search warrant, law enforcement officers searched the [petitioner's] vehicle and recovered a handgun.

*State v. Timothy Damon Carter*, No. M2014-01532-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Nashville, Mar. 8, 2016), *perm. app. denied* (Tenn. June 23, 2016).

In a timely, 40-page petition for post-conviction relief accompanied by some 300 pages of exhibits, the petitioner alleged myriad grounds for relief. In its preliminary order, the post-conviction court noted that the petitioner had proceeded pro se at trial after the trial court concluded that the petitioner had, by his obstreperous behavior, forfeited his right to appointed counsel and that this court had affirmed that decision on direct appeal. Citing *State v. Carruthers*, 35 S.W.3d 516 (Tenn. 2000), the post-conviction court noted that the petitioner could only present claims of ineffective assistance of counsel for those times that he was represented by counsel. Because, the court concluded, all the issues raised by the petitioner in his original petition against the attorneys who represented him before he forfeited the right to counsel had been fully litigated on direct appeal, those issues qualified as previously determined and could not be a basis for post-conviction relief. The court similarly concluded that the petitioner's claims of prosecutorial misconduct had been previously litigated. The post-conviction court ruled that allegations of ineffective assistance by appellate counsel could be raised in a petition for post-conviction relief but strongly cautioned newly appointed post-conviction counsel to consult with the petitioner to present only cognizable claims in an amended petition for relief.

Just over a month later on February 6, 2017, the petitioner filed pro se a Motion for Arrest of Judgment, which motion argued that the judgment had not been duly entered in the court minutes; that "Rutherford County authorities exceeded their jurisdiction by investigating criminal activities in Rutherford County, Tennessee and reporting their findings to the Davidson County, Tennessee, grand jury for indictment"; that prosecutors had "acted in bad faith" by seizing his car without a warrant; and that "the search warrant was issued . . . outside of their jurisdiction." Appointed post-conviction counsel moved to withdraw just three days later, citing the petitioner's desire to represent himself in the post-conviction proceeding.

-2-

At the hearing on the motion to withdraw, the petitioner told the court that he wanted to represent himself with the assistance of elbow counsel. The court refused to appoint elbow counsel and observed that the petitioner was "not going to cooperate with anybody." When the petitioner alleged that the problem lay with appointed counsel's failure to adequately communicate with him, the court allowed appointed counsel to respond:

> Your Honor, I have received a number of letters from [the petitioner] in a very short amount of time all directing me to do very different things. None of which I really understood what he wanted. So I thought the safest course of action would be to file the motion to withdraw, which is what he said he wanted me to do.

The post-conviction court cautioned the petitioner that if the court appointed counsel, then "the counsel makes the decisions," before asking the petitioner if he wanted counsel appointed. The petitioner replied, "I'm asking that this court allow me to be pro se so I can guard my federal and state constitution within my post-conviction." When the court again refused to appoint elbow counsel, the petitioner expressed a desire to have counsel appointed. Despite this request, the petitioner threatened "to go to the Board again" on any person appointed as counsel who failed to communicate with him.

Less than three months following her appointment, the petitioner's second appointed counsel moved to withdraw as counsel, stating that she "has been threatened with action in the Federal courts and with complaint to the Tennessee Board of Professional Responsibility if Petitioner's directives are not made." Second appointed counsel stated that it was her belief that her relationship with the petitioner was "beyond repair." At the hearing on her motion, second appointed counsel told the post-conviction court that the petitioner had threatened to file a complaint against her with the Board of Professional Responsibility if she "didn't do what he told [her] to do." When the court asked the petitioner why he refused to cooperate, he replied, "I wrote this woman a letter, this attorney a letter, asking her to guard my statement and my fair constitution in my original post and do not amend my post. And if you amend my post, I will contact Federal Court and make them command you to[.]" At that point, the post-conviction court concluded that the petitioner had demonstrated his unwillingness to work with appointed counsel and had, therefore, waived his right to appointed counsel. The post-conviction court invited the petitioner to "file something else" and promised to hold a hearing on any of his claims that could "qualif[y] for post-conviction relief." The court admonished the petitioner that he could not raise a claim of ineffective assistance of counsel for anything that occurred at trial when he represented himself and that the propriety of the pretrial rulings had already been litigated on direct appeal.

Following the hearing, the post-conviction court entered an order reiterating its ruling that the petitioner had forfeited his right to appointed counsel in the post-conviction proceeding. In the order, the post-conviction court included a chart indicating which claims the petitioner was precluded from addressing in the post-conviction proceeding because he had represented himself at trial, because the claims qualified as either previously determined or waived, or because the claims were not cognizable grounds for post-conviction relief.

At the May 7, 2018 evidentiary hearing, the petitioner insisted that he could not proceed "because there was never a written waiver of [me] waiving my right to proceed pro se." The petitioner maintained that the post-conviction court had violated due process principles because it had forced him to proceed pro se and, at the same time, had denied him the right to be heard on his pro se filings. The court ordered the petitioner to proceed.

Manuel Russ, who was appointed to represent the petitioner following the hearing on the motion for new trial and on appeal, agreed that the petitioner had asked him to file a supplemental brief addressing the fact that the trial court had refused to hear those pretrial motions the petitioner had filed pro se. He said that he "did not file any request [with] the trial court [to] add those issues in" because the filings at issue were simply a rehashing of "what [the petitioner's previous counsel] had done regarding the suppression issues and had already had two hearings in front of the Court about it." He said that it was his opinion that those issues had been "adequately addressed" and that he made those issues "a very big point in our appellate brief." He said, "The pro se motions I didn't think really added anything to the argument that we were making at the Court of [Criminal] Appeals."

Mr. Russ said that he did not recall the petitioner's asking him to obtain a bill of particulars, but he noted that he received "a lot of written correspondence" from the petitioner "with all kinds of things being requested and suggested." Mr. Russ agreed that the petitioner "probably did" ask counsel to "supplement the bill of particulars into [the] appellate brief," but he said that he could not recall whether a bill of particulars had been filed, that a bill of particulars would not have been helpful to a determination of the issues raised on direct appeal, and, most importantly, "supplementing the record is not simply that you start submitting documents that you would like for [the appellate court] to look at." Mr. Russ noted that, if a bill of particulars had been filed, it would have been part of the record and that, when he was appointed to represent the petitioner after the hearing on the motion for new trial, "for the most part the record is fixed at what the record is because that's just procedurally how things work." In any event, Mr. Russ

emphasized, a bill of particulars would not "have added anything to [the petitioner's] appeal."

Mr. Russ recalled having had "several conversations either by mail or otherwise" with the petitioner wherein the petitioner "had trouble understanding" how he could be charged in one county when he had been arrested in another. Mr. Russ said that he explained to the petitioner that the location where the stolen property was discovered was "proper jurisdiction" for a theft charge. He said that the petitioner's claim that Davidson County lacked subject matter jurisdiction to charge him with the weapons offense lacked merit because the petitioner was arrested in Davidson County in possession of a weapon. Mr. Russ said that he did not challenge the sufficiency of the evidence supporting the felon in possession conviction because he "felt that the evidence was probably sufficient as well as the fact that we had much better issues regarding a more serious charge, theft, than we did regarding the handgun."

As to the petitioner's allegation that Mr. Russ performed deficiently by failing to bring a Confrontation Clause challenge to the trial court's allowing the State to present the affidavit of a State's witness, Mr. Russ said that he did include that issue on appeal. He said the issue was also raised in the motion for new trial.

After Mr. Russ left the stand, the petitioner noted that none of the witnesses he had subpoenaed on the issue of subject matter jurisdiction were present. The post-conviction court stated that the witnesses were not there because they were not relevant to those issues that the petitioner was permitted to address via a claim for post-conviction relief. The court then continued the hearing so that the petitioner could secure the testimony of Jack Byrd, one of the attorneys who represented him prior to trial.

Mr. Byrd testified that he was originally appointed to represent the petitioner in May 2012 and that he was permitted to withdraw from the case after the trial court determined that the petitioner had forfeited the right to appointed counsel. Mr. Byrd said that he did not request funds for an expert to value the comic books stolen by the petitioner despite the petitioner's request that he do so, explaining that, by that time, the "comic books were no longer in the possession of the State, so there was no way that an appraisal could be done of each comic book. So that would have been a moot motion to even try to attempt." Mr. Byrd said that, based upon his own research, he learned that "the only way to do an accurate appraisal of those comic books would be to have the actual comic book in hand and to be able to assess the value of it." Mr. Byrd explained that he could not have obtained the comic books for the purpose of having them appraised because, as he understood it, "some of those comic books had been traded, sold, and other things. So they would not be obtainable." He agreed that all of the stolen comic books had been returned to the victim.

During cross-examination by the State, Mr. Byrd said that, prior to becoming an attorney, he "was a command criminal investigator in the United States military" and that, after leaving the military, he worked as a private investigator for some 13 years. He said that, utilizing the skills he garnered as an investigator, he attempted to ascertain the value of the comic books but soon learned that an appraisal of the comic books could not be performed without having possession of the actual books that were taken. He said that he obtained funds to hire a handwriting expert and that, before being relieved as counsel of record, he consulted with the handwriting expert he hired. He said that he did not ask for funds to hire an investigator because he already has an investigator with whom he works when he is unable to perform investigations on his own.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In its order denying post-conviction relief, the post-conviction court meticulously detailed the history of the case, including the sheer volume of lengthy pro se pleadings filed by the petitioner in the post-conviction court, another Davidson County Criminal Court, and our supreme court. The history provided by the court also details the petitioner's inability to effectively communicate with any of the attorneys that have previously been appointed to represent him. The post-conviction court concluded that all claims regarding ineffective assistance of counsel at trial were pretermitted by the trial court's decision that the petitioner forfeited the right to appointed counsel, a decision that was affirmed by this court on direct appeal. As such, the court concluded, the petitioner could only raise those claims of ineffective assistance of counsel directed at those attorneys who represented him prior to and after his trial. Of those claims directed at counsel who had represented him prior to trial, the post-conviction court observed that most qualified as either waived or previously determined. Specifically, the court concluded that petitioner's claims regarding his counsel's handling of the seized evidence was previously adjudicated at trial and on appeal. The court further found that the petitioner's claims of "prosecutorial misconduct," which might otherwise have been cognizable in a post-conviction proceeding, were "simply reframing the same issue addressed during the suppression hearing and direct appeal," and, as such, were previously determined.

The post-conviction court found that Mr. Byrd's failure to request funds to hire an expert to appraise the stolen comic books did not amount to deficient performance. The court accredited Mr. Byrd's testimony that an accurate appraisal was impossible because the books were no longer in the possession of the victim or the State. The court found that the proof adduced at trial confirmed that not all the books were available because "many books were not recovered and some of the recovered books had sustained damage so their value could not be accurately assessed." The post-conviction

court also observed that the petitioner had failed to submit any evidence at the evidentiary hearing suggesting that the valuation of the comic books was erroneous.

The post-conviction court accredited Mr. Russ's testimony and found that "he made [] reasonable strategic decisions when determining which issues should be raised in the direct appeal." The court observed that the petitioner's claim that Mr. Russ failed to challenge the admission of certain testimony was belied by the record, which showed that the issue was fully litigated at trial and on direct appeal.

In this timely appeal, the petitioner alleges that the post-conviction court erred by requiring him to proceed pro se, by refusing to permit him to orally amend his petition at the evidentiary hearing, and by concluding that many of his claims for post-conviction relief were either waived or previously determined. The petitioner also contends that the State engaged in prosecutorial misconduct by seeking a second superseding indictment in his case and that he was deprived of the effective assistance of counsel on direct appeal.

We view the petitioner's claims with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

## A. Forfeiture of the Right to Counsel

The petitioner first asserts that the post-conviction court erred by determining that he had forfeited his right to appointed counsel and requiring him to proceed pro se.

A brief history of the petitioner's prior behavior toward his appointed attorneys is in order at this juncture. As we detailed in our opinion on direct appeal, the petitioner behaved abhorrently toward the attorneys who were appointed to represent him prior to the trial court's determination that he had forfeited the right to appointed counsel at trial. Although the trial court provided limited information regarding the reasons that

the petitioner's first two attorneys, Jessamine Grice and Graham Pritchard, were permitted to withdraw, the record established that the trial court permitted attorney Paul Walwyn to withdraw after the petitioner became verbally abusive to Mr. Walwyn's staff. *See Timothy Damon Carter*, slip op. at 2-4.

The trial court then appointed Mr. Byrd. Shortly thereafter, Mr. Byrd reported to the court that the petitioner refused to cooperate with Mr. Byrd's trial preparation. A few days later, Mr. Byrd moved to withdraw, but the trial court denied the motion despite that, among other things, the petitioner "spat at Mr. Byrd after the suppression hearing held on September 4, 2012." *Id.*, slip op. at 5. One month later, Mr. Byrd again moved to withdraw, and the trial court granted the motion. The court ruled that the petitioner would be required to represent himself with Mr. Byrd acting as elbow counsel.

Three months later, the petitioner moved the court to reappoint Mr. Byrd as his counsel. The trial court denied the motion and concluded that the petitioner had forfeited the right to appointed counsel by his "extremely serious misconduct." In support of its ruling, the trial court found that the petitioner "refused to cooperate with any of his appointed counsel and filed complaints against them with the Consumer Assistance Program Board of Professional Responsibility"; that the petitioner spat on Mr. Byrd following a suppression hearing; and that the petitioner made threats "to Mr. Byrd, his family, and his law office staff," including a threat "to 'slash' Mr. Byrd in court should he continue as counsel on the case." The court also found that the petitioner was attempting to delay his trial by repeatedly requesting counsel and then asking to proceed pro se.

This court affirmed the trial court's ruling on direct appeal:

Even though the forfeiture of counsel occurred prior to trial, based on these facts, we conclude that the [petitioner's] behavior was "sufficiently egregious to support a finding that he forfeited his right to counsel" and in such a situation, the trial court had no other choice than to conclude that the [petitioner] had forfeited his right to counsel. Due to numerous delays caused by the [petitioner], this case was not tried until three years after the crime was committed. The [petitioner] was uncooperative or refused to participate in multiple proceedings, and he repeatedly demanded that he be appointed a new attorney or be allowed to represent himself. The [petitioner's] threatening and abusive behavior towards his attorneys and their staff seemed to escalate with each new

appointment of counsel.  Indeed, the [petitioner] sp[a]t on his fourth attorney and threatened to physically assault him on multiple occasions.  In such a situation, the trial court would be hard-pressed to appoint a fifth attorney without serious concern for his or her safety.

*Id.*, slip op. at 6.

Against this backdrop, the post-conviction court appointed counsel to represent the petitioner as part of its preliminary order.  Within a very short period of time, the petitioner inundated appointed counsel's office with correspondence "directing [counsel] to do very different things," none of which directives counsel could even understand.  Appointed counsel also indicated that the petitioner had asked her to withdraw so he could represent himself.  The post-conviction court granted counsel's motion to withdraw but offered to appoint another attorney should the petitioner desire one.  The petitioner replied, "I'm asking that this court allow me to be pro se so I can guard my federal and state constitution within my post-conviction," but asked the court to appoint elbow counsel.  When the court refused to appoint elbow counsel, the petitioner expressed a desire to have counsel appointed but threatened "to go to the Board again" on any person appointed as counsel who failed to communicate with him.  Within three months, newly appointed post-conviction counsel moved to withdraw, citing the petitioner's threats of "action in the Federal courts and with complaint to the Tennessee Board of Professional Responsibility if Petitioner's directives are not made."  The petitioner acknowledged threatening to "contact Federal Court and make them command" newly appointed counsel to comply with his demands.  Based upon the petitioner's well-demonstrated unwillingness to work with any attorney, the post-conviction court concluded that the petitioner had forfeited his right to appointed counsel.

Although there is no constitutional right to counsel in post-conviction proceedings, *see House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995), the Post-Conviction Procedure Act includes a statutory right to counsel, *see* T.C.A. § 40-30-107(b)(1).  "The appointment of counsel assists in ensuring that a petitioner asserts all available grounds for relief and fully and fairly litigates these grounds in a single post-conviction proceeding."  *Leslie v. State*, 36 S.W.3d 34, 38 (Tenn. 2000); *see also Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010) (emphasizing "that a post-conviction petitioner does not stand in the same shoes as the criminally accused" and stating that "the petitioner seeking post-conviction relief is entitled to counsel 'not to protect them from the prosecutorial forces of the State, but to shape their complaints into the proper legal form and to present those complaints to the court'" (citation omitted)).  The statutory right to counsel, and indeed the entire post-conviction process itself, "may be denied to a petitioner who abuses the post-conviction process."  *Leslie*, 36 S.W.3d at 39 (citing *Cazes*

*v. State*, 980 S.W.2d 364, 365 (Tenn. 1998)).

Our standard of review of the trial court's determination that the post-conviction petitioner forfeited his statutory right to counsel "is whether the trial court abused its discretion in . . . requiring the petitioner to proceed without counsel." *Leslie*, 36 S.W.3d at 37-38.

Initially, the post-conviction court appointed counsel to represent the pro se petitioner following the filing of his timely petition for post-conviction relief. Despite the appointment of counsel, the petitioner continued to file pro se pleadings in the post-conviction court.[1] Just over a month following the entry of the order, appointed counsel moved to withdraw at the petitioner's behest. Unlike the court in *Leslie*, the post-conviction court held a hearing on the motion to determine whether the petitioner, in fact, wanted to proceed pro se. *See Lovin v. State*, 286 S.W.3d 275, 285 (Tenn. 2009) ("While the constitutional right to self-representation does not apply to post-conviction proceedings, both the statutes authorizing the appointment of counsel in post-conviction proceedings and the rules implementing these statutes recognize that prisoners have the right of self-representation in post-conviction proceedings."). Appointed counsel testified that, within the short time since her appointment, she had been inundated with correspondence from the petitioner directing her to act and that, by and large, she was unable to discern the petitioner's desires. She said that, ultimately, it was her "understanding that [the petitioner] wanted to represent himself in this matter, and he asked me to withdraw." The petitioner spent the bulk of the hearing arguing with the post-conviction court about those grounds for relief that would be cognizable in the post-conviction proceeding. He initially asked to represent himself, acknowledging that he had asked appointed counsel to withdraw. He then asked for elbow counsel. When the court refused to appoint elbow counsel, the petitioner agreed to the appointment of counsel but immediately threatened "to go to the Board" on any attorney that did not communicate with him in the manner he desired. The second attorney appointed to represent the petitioner likewise moved to withdraw in short order, noting that the petitioner had threatened her with action in federal court if she did not comply with his demands. The petitioner acknowledged the threat, and, at that point, the post-conviction court concluded that the petitioner's past behavior indicated that he was "not going to cooperate with anybody."

In our view, the record fully supports the conclusion of the post-conviction court that the petitioner forfeited his statutory right to counsel. The petitioner's behavior toward his appointed counsel during the post-conviction proceeding was essentially an

---

[1] Indeed, the sheer volume of pro se pleadings, most of which are accompanied by repetitive and irrelevant exhibits, is substantial. The petitioner's pro se petition and exhibits totaled more than 350 pages.

extension of his behavior toward his appointed counsel during the trial proceeding. The petitioner simply failed to grasp the concept that appointed "[c]ounsel is in no way obligated to comply with a petitioner's demands to investigate or pursue unreasonable or frivolous claims." *Leslie*, 36 S.W.3d at 38. We cannot say that the post-conviction court abused its discretion by refusing to continue appointing attorneys to represent the petitioner given the history in this case. Consequently, the petitioner is not entitled to relief on this issue.

## B. Amendment of Petition

The petitioner next contends that the post-conviction court erred by refusing to permit him to orally amend his petition at the evidentiary hearing to add a claim that his counsel performed deficiently by failing to adequately litigate a Fourth Amendment claim prior to trial. We need not tarry long over the petitioner's claim because, although the post-conviction court "may allow amendments and shall do so freely when the presentation of the merits of the cause will otherwise be subserved," Tenn. R. Sup. Ct. 28, §8, the post-conviction court is under no duty to allow the addition of an issue that is not cognizable in a post-conviction proceeding or that is clearly without merit.

The petitioner's counsel moved to suppress the evidence seized from his car on a number of constitutional grounds, including the one that the petitioner claims counsel failed to adequately litigate, and the trial court denied the motion. *See Timothy Damon Carter*, slip op. at 9-12. Counsel then moved for a rehearing on the motion to suppress, and the trial court again refused to suppress the evidence. *See id.*, slip op. at 12-14. Mr. Russ included the denial of the motion to suppress as an issue on appeal, and this court affirmed the ruling of the trial court:

> We conclude that: (1) the comic books were in plain view; (2) Officer Eubank had a right to be in the condominium complex and standing next to the [petitioner's] vehicle when he viewed the comic books; and (3) the incriminating nature of the comic books was immediately apparent. Detective Eubank's observation of the comic books in plain view gave him probable cause to believe that the [petitioner's] vehicle contained stolen property, and thus, the seizure of the vehicle pursuant to the automobile exception was justified.
>
> As to the [petitioner's] argument that, pursuant to Tennessee Code Annotated section 6-54-301, Detective

-11-

Eubank was operating outside the parameters of his jurisdiction and his authority as a police officer, we agree with the trial court's conclusion that this statutory violation is not a violation of the [petitioner's] constitutional rights, rendering the exclusionary rule inapplicable. The trial court did not err when it denied his motion to suppress.

*Id.*, slip op. at 29 (citations omitted).

Consequently, as a stand-alone ground for relief, the petitioner's challenge to the search of his vehicle qualifies as having been previously determined and, as such, he cannot raise it in a post-conviction petition. *See* T.C.A. § 40-30-106(h) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence."). Moreover, because nothing suggests that the validity of the search was anything other than fully and fairly litigated, the "presentation of the merits of the cause" would not "otherwise be subserved" by the trial court's refusal to allow the addition of this issue couched in terms of ineffective assistance of counsel.

## C. Trial Court Errors

The petitioner next asserts that the post-conviction court erred by concluding that his "pro se motions were waived because he represented himself at trial." Initially, it is not clear to which pro se motions the petitioner is referring. As indicated, the petitioner filed numerous pro se pleadings in the post-conviction court. Additionally, at the hearings on the removal of counsel and the evidentiary hearings, the petitioner made more than one reference to both the post-conviction court's ruling on some of his pro se pleadings prior to the hearing and the trial court's refusal to rule on some of his pro se pleadings prior to trial. To the extent that the petitioner is referring to the post-conviction court's failure to rule on his pro se pleadings prior to the evidentiary hearing, the petitioner has failed to establish that any omission by the post-conviction court inured to his detriment. To the extent that the petitioner is referring to the trial court's failure to rule on pro se pleadings filed prior to trial, any claim of error in this regard that occurred prior to trial has been waived by the petitioner's failure to present it as a ground for relief on direct appeal. *See* T.C.A. § 40-30-106(g) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . .").

-12-

Similarly, the post-conviction court did not err by concluding that the petitioner's claim that the district attorney general committed prosecutorial misconduct by obtaining a superseding indictment was waived by his failure to present it as a ground for relief on direct appeal.

## D. Ineffective Assistance of Counsel

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

### 1. Prior to Trial

The petitioner contends that he was deprived of the effective assistance of counsel prior to trial because his counsel failed to challenge the validity of the search warrant based upon the absence of a judge's signature on the warrant, failed to dismiss the superseding indictment for violation of the rule of mandatory joinder, failed to request grand jury materials, failed to file a motion for a bill of particulars, failed to seek a

-13-

change of venue, failed to file a motion for alibi, failed to request funds to hire an expert to appraise the stolen comic books, and failed to subpoena a witness to the hearing on the motion to suppress.

As indicated above, although the petitioner's claims of ineffective assistance of counsel relative to the handling of the motion to suppress the evidence seized from his car have not been waived or previously determined, the underlying claims have been fully and fairly litigated. No evidence suggests that counsel could have done anything more. Consequently, the petitioner is not entitled to relief on this issue.

The petitioner's claims regarding counsel's failure to file motions with regard to venue, alibi, and a bill of particulars are utterly unsupported by evidence in the record, citation to authorities, or argument. The petitioner's claim that counsel performed deficiently by failing to seek dismissal of the superseding indictment is also unsupported by evidence, authorities, or argument. Accordingly, these claims are waived. *See* Tenn. Ct. Crim. App. R. 10(b). Additionally, the petitioner's claim regarding joinder is completely without merit because the petitioner was charged with only one theft offense.

As to the petitioner's claim that counsel performed deficiently by failing to seek funds for an expert appraisal of the stolen comic books, Mr. Byrd's accredited testimony established that he did not seek funds for an expert appraisal because the comic books were not available for appraisal. Additionally, the post-conviction court observed that many of the comic books sustained damage that affected their value. Under these circumstances, the petitioner failed to establish that counsel performed deficiently.

*2. Post-Trial*

The petitioner asserts that his counsel performed deficiently by failing to file a motion for arrest of judgment based upon the lack of subject matter jurisdiction. The petitioner presented no evidence on this claim at the evidentiary hearing. Mr. Byrd did testify that the petitioner asked him to add a claim challenging the subject matter jurisdiction to the motion for new trial and that he unsuccessfully attempted to explain to the petitioner why that claim lacked merit. The petitioner's confusion arises from the fact that although he originally took the comic books from the victim's residence in Rutherford County, the stolen comic books were seized in Davidson County, and he was subsequently prosecuted in Davidson County. The jurisdictional question, as framed by the petitioner, is actually a claim of improper venue. Although our state constitution "provides that an accused must be tried in the county in which the crime was committed," the State need only establish venue, and thereby the jurisdiction of the trial court, by a preponderance of the evidence. *State v. Young*, 196 S.W.3d 85, 101-02 (Tenn. 2006) (citations omitted). Moreover, "[v]enue is a question for the jury," and "the jury is

-14-

entitled to draw reasonable inferences from the evidence" when determining venue. *Id.* (citations omitted). "Importantly, where different elements of the same offense are committed in different counties, 'the offense may be prosecuted in either county.'" *Id.* (citing Tenn. R. Crim. P. 18(b)).

Theft is committed by knowingly obtaining *or* exercising control over property without the owner's consent. *See* T.C.A. § 39-14-103(a). In this case, although the petitioner obtained the comic books from the victim's residence, he clearly exercised control over the comic books when they were inside his car in Davidson County. Because some elements of the theft offense were committed in Davidson County, the offense was properly prosecuted in Davidson County. Because the offense was properly prosecuted in Davidson County, counsel did not perform deficiently by failing to seek an arrest of judgment on the basis of a lack of jurisdiction.

The petitioner also asserts that his counsel performed deficiently by failing to obtain certified copies of his prior convictions for use at the sentencing hearing and that he was prejudiced because "he received an illegal career offender sentence." Unfortunately for the petitioner, however, he represented himself at the sentencing hearing and, as such, cannot present a claim of ineffective assistance of counsel for anything related to his sentence. Moreover, as we noted on direct appeal, "the State offered the presentence report and certified copies of the [petitioner's] convictions," which established that the petitioner "had previously been convicted of: two counts of burglary, three counts of aggravated burglary, two counts of aggravated robbery, one count of felony possession of a weapon, one count of theft of property valued at over $10,000, one count of theft of property valued at over $1,000, and one count of aggravated assault." *Timothy Damon Carter*, slip op. at 21. Thus, the petitioner was properly sentenced as a career offender.

### 3. Appeal

The petitioner claims that Mr. Russ performed deficiently by failing to challenge the subject matter jurisdiction of the Davidson County Criminal Court on appeal. As discussed above, there is no merit to the petitioner's claim of lack of jurisdiction.

The petitioner also claims that Mr. Russ performed deficiently by failing to challenge on appeal the trial court's failure to issue a ruling on the petitioner's pro se pretrial motions and the sufficiency of the convicting evidence for his conviction of being a felon in possession of a firearm.

Mr. Russ testified that he reviewed the record in this case and raised only those issues he believed to be meritorious on appeal. Specifically, Mr. Russ testified that he did not challenge the sufficiency of the evidence for the weapons conviction because it was his opinion that the evidence was sufficient to support the petitioner's conviction for that offense. As to the petitioner's pro se pretrial motions, Mr. Russ said that he did not include that as an issue because the filings at issue were simply a rehashing of "what [the petitioner's previous counsel] had done regarding the suppression issues and had already had two hearings in front of the Court about it" and that he had adequately addressed those issues in his appellate brief.

"Counsel is not constitutionally required to argue every issue on appeal," *State v. Matson*, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (quoting State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)), and, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues," *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). The determination to raise or forego an issue on appeal is a matter "generally within appellate counsel's sound discretion," *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citing *Jones*, 463 U.S. at 751; *King v. State*, 989 S.W.2d 319, 334 (Tenn. 1999); *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993)), and, as a result, counsel's decision in this regard "should be given considerable deference" on appeal, *Carpenter*, 126 S.W.3d at 887 (citing *Campbell v. State*, 904 S.W.2d 594, 597 (Tenn. 1995); *Strickland*, 466 U.S. at 689).

Typically, to determine whether the petitioner is entitled to relief based upon counsel's failure to raise an issue on appeal, this court must examine the merit of the omitted issue. As to the petitioner's claim that Mr. Russ should have challenged the sufficiency of the evidence supporting his weapons possession conviction, we observe that the evidence was more than sufficient to support that conviction. During the search of the vehicle registered in the petitioner's name, authorities discovered the victim's stolen comic books, "a vehicle registration and cell phone bill, both listing the [petitioner's] name," and "a gun in the engine compartment of the vehicle," which "gun was shown to the jury and entered into the record as evidence." *Timothy Damon Carter*, slip op. at 20. Elaine Ragan, an employee of the criminal court clerk's office "identified a certified copy of the [petitioner's] prior conviction for a felony in case number 2004-B-1762, Theft of Property, a Class C Felony." *Id.*, slip op. at 21. Under these circumstances, Mr. Russ did not perform deficiently.

As to the petitioner's claim that counsel should have challenged the trial court's failure to rule on his pro se pretrial motions, we observe, as we did above, it is unclear from the record exactly to which motions the petitioner, a prolific filer of a variety of pleadings, refers. Moreover, the petitioner's questioning of Mr. Russ

-16-

established that Mr. Russ did not believe that the court's failure to rule on any of the pro se motions presented a viable issue on appeal, and the petitioner presented no evidence to suggest otherwise. Under these circumstances, the petitioner cannot establish that Mr. Russ performed deficiently.

Finally, the petitioner contends that Mr. Russ performed deficiently by failing to challenge the admission of an affidavit from Tamara Cain, an accountant at one of the businesses to which the petitioner sold the victim's comic books and from which the victim was able to repurchase some of his stolen comic books, on grounds that admission of the affidavit violated the Confrontation Clause. At trial, the State presented a receipt for the sale of the comic books to a business called Metropolis that bore the petitioner's name along with an affidavit by Ms. Cain establishing that the receipt was a business record from Metropolis. The petitioner did not object to the admission of the affidavit or receipt at trial. On appeal, the petitioner challenged the admission of the affidavit and accompanying receipt on hearsay grounds but did not challenge them on Confrontation Clause grounds. Such a challenge would not have availed the petitioner of relief. The receipt, once properly qualified as a business record, was not testimonial and, as such, the Confrontation Clause had no application to its admission into evidence. *See State v. Cannon*, 254 S.W.3d 287, 303 (Tenn. 2008).

*Conclusion*

Based upon the foregoing analysis, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE